IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CV-00231-F

ANGELA GORE, )
 )
 Plaintiff/Claimant, )
 )
 )     **MEMORANDUM AND**
v. )     **RECOMMENDATION**
 )
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
 )
 Defendant. )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, DE-22] pursuant to Fed. R. Civ. P. 12(c). Claimant Angela Gore ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on February 12, 2013, alleging disability beginning October 1, 2003. (R. 18, 206-09). Her claim was denied initially and upon reconsideration. (R. 18, 65-83). A hearing before the Administrative Law Judge ("ALJ") was held on March 26, 2015, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 36-64). On April 24, 2015, the ALJ issued a decision denying

Claimant's request for benefits. (R. 15-35). On August 13, 2015, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

If as a result of the above analysis the ALJ concludes that a claimant is disabled and there is medical evidence that the claimant has drug addiction or alcoholism ("DAA" or "substance abuse"), the ALJ must determine whether the DAA is a contributing factor material to the determination of disability. *Id.* § 404.1535(a). If the DAA is found to be material, the claimant cannot be considered

3

disabled under the Act. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."). The claimant has the burden of proving that the DAA is not material. *See Overstreet v. Astrue*, No. 4:11-CV-58-JG, 2012 WL 4355505, at *2 (E.D.N.C. Sept. 21, 2012) (unpublished) (citing *Bridgeman v. Astrue*, No. 4:07-CV-81-D, 2008 WL 1803619, at *3 (E.D.N.C. Apr. 21, 2008) (unpublished) (further citation omitted); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999)).

In making the materiality determination as to DAA, the key factor is whether the claimant would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). The Commissioner must evaluate which of the physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determine whether any of the remaining limitations would be disabling. *Id.* § 404.1535(b)(2). If the remaining limitations are found not to be disabling, the claimant's DAA is deemed a contributing factor material to the determination of disability, and the claimant is found not disabled. *Id.* § 404.1535(b)(2)(i). However, if the remaining limitations are found to be disabling, the DAA is deemed not to be material, and the claimant is determined to be disabled. *Id.* § 404.1535(b)(2)(ii).

In this case, Claimant alleges that the ALJ erred by finding Claimant's substance abuse to be material to her disability and failing to find that Claimant's mental impairments met the listings. Pl.'s Mem. [DE-20] at 7-10.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant to be

4

disabled but found that Claimant's substance abuse disorder was a contributing factor material to the determination of disability, and accordingly determined that Claimant was "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 20). Next, the ALJ determined Claimant had the following severe impairments: history of seizure disorder, posttraumatic stress disorder ("PTSD") with panic attacks, bipolar disorder, and substance abuse. (R. 21). The ALJ also found Claimant had nonsevere impairments of asthma and a history of left radical nephrectomy. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21-22). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living, and moderate limitations in social functioning and concentration, persistence, and pace with no episodes of decompensation. (R. 22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform a full range of work at all exertional levels requiring no concentrated exposure to hazards, a limitation to unskilled work (generally defined as performing simple, routine, and repetitive tasks), no interaction with the public, and no "team-type" interaction with coworkers but can have incidental contact with both the public and coworkers. (R. 23). The ALJ also found that Claimant was likely to miss three or more workdays each month due to her substance abuse. *Id.* At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a special education teacher and a maintenance schedule clerk. (R. 23-24). At step five, upon considering Claimant's age, education, work experience, and RFC based on all

5

impairments, including the substance abuse disorders, the ALJ determined that there are no jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 24).

The ALJ then performed the sequential evaluation process a second time to determine the extent to which Claimant's mental and physical limitations would remain if she stopped the substance abuse. The ALJ determined that Claimant would continue to have severe impairments of a history of seizure disorder and her remaining mental impairments. (R. 25). At step three, the ALJ concluded these remaining impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's remaining mental impairments would have resulted in mild limitations in her activities of daily living, and moderate limitations in social functioning and concentration, persistence, and pace with no episodes of decompensation. (R. 25-26).

The ALJ then assessed Claimant's RFC, finding that if Claimant stopped the substance abuse, Claimant would have had the ability to perform a full range of work at all exertional levels requiring no concentrated exposure to hazards, a limitation to unskilled work (generally defined as performing simple, routine, and repetitive tasks), no interaction with the public, and no "team-type" interaction with coworkers but could have incidental contact with both the public and coworkers. (R. 26). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 26-30).

At step four, the ALJ concluded that if Claimant stopped the substance abuse, she would have been unable to perform her past relevant work. (R. 30). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC if Claimant stopped the substance abuse, the

6

ALJ determined Claimant would be capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. *Id.*

## V. DISCUSSION

### A. The ALJ's Consideration of Claimant's Substance Abuse

Claimant contends that the ALJ erred by finding Claimant's substance abuse to be material to her disability. Pl.'s Mem. [DE-20] at 7-8. Specifically, Claimant argues that the ALJ erroneously found that Claimant's substance abuse could have contributed to flashbacks and nightmares without citing to any medical source for this finding, and stated that the medical records indicated Claimant's substance abuse exacerbated her psychological symptoms when this statement does not appear in the medical records. *Id.* In response, the Commissioner argues that substantial evidence supports the ALJ's determination that Claimant's substance abuse was material to her disability. Def.'s Mem. [DE-23] at 11-14.

Here, the ALJ stated as follows in regards to Claimant's substance abuse:

> [t]he claimant has an extensive history of substance abuse, and there is no evidence that the claimant abstained from substance abuse for a continuous period during the period at issue. I find the claimant's substance abuse was material to the determination of disability based on evidence that it exacerbated her psychological symptoms. For example, in June 2007, while the claimant reported flashbacks and nightmares related to her military service, she also reported she consumed a few beers each week and periodically used crack cocaine, both of which could have contributed to her flashbacks and nightmares. Additionally, the claimant's VA disability rating included "polysubstance abuse," which further supports the determination that her substance abuse was material and disabling. Accordingly, the medical records indicate that the claimant's substance abuse exacerbated her psychological symptoms such that she would miss three or more workdays per month during the period at issue.

(R. 23) (citations omitted). Claimant takes issue with the fact that the ALJ found Claimant's substance abuse could have contributed to her flashbacks and nightmares and that it exacerbated her

7

psychological symptoms without citing to medical record evidence stating as such. Pl.'s Mem. [DE-20] at 8. The ALJ, however, thoroughly considered the medical record evidence of Claimant's psychological treatment and the effects of Claimant's substance abuse in accordance with the regulations, and the above statements reflect her conclusions drawn from that evidence. The ALJ concluded that

> the claimant's reports of increased psychiatric symptoms were normally associated with alcohol and/or drug abuse, and there are no objective abnormalities documented during her periods of sobriety to suggest that she would have been precluded from performing the above [RFC] assessment through her date last insured. The medical records reflect that even at times when she was not abusing drugs and alcohol, she was not compliant with PTSD medications, and she received very little mental health treatment during the period from her alleged onset date through her date last insured. Her noncompliance and lack of regular treatment suggests her symptoms were not significantly limiting. Nonetheless, in November 2004, despite the absence of any psychotropic medications, no significant objective abnormalities were documented.

(R. 27) (citation omitted). The record evidence supports the ALJ's conclusions.

The ALJ noted that in June 2007, despite using alcohol and crack cocaine, Claimant's mental status examination was generally unremarkable, she denied suicidal and homicidal ideations, and she had a Global Assessment of Functioning ("GAF") score of 65, representing only mild limitations in social or occupational functioning. (R. 27); *see* (R. 496-503) (in June 2006, Claimant requested a consultation for treatment of her PTSD and bipolar disorder, and July 6, 2007 treatment notes reflecting that Claimant denied suicidal and homicidal thoughts, had normal and logical thought content, a calm mood, and no hallucinations); *see also* (R. 694-95) (June 19, 2007 treatment note reflecting that Claimant had stopped taking psychotropic medications, was quite anxious, but otherwise her review of symptoms was positive). The ALJ noted that "[t]his relatively normal mental status examination and GAF score suggest that if the claimant was to completely abstain from

8

drug and alcohol use, her level of functioning may be even higher." (R. 27). In July 2007, Claimant again had a GAF score of 65, was using cocaine one to three times a week, reported hallucinations and severe mood swings, noted that she has homicidal thoughts while high, and did not want to try group therapy but was willing to continue individual therapy. (R. 28); *see* (R. 487-90) (July 20, 2007 treatment note also noting that lithium seemed to work for Claimant but she stopped taking it after her siblings told her there was nothing wrong with her). In August 2007, Claimant reported that she experienced homicidal thoughts when triggered but since starting psychotropic medications, she had not been in a physical fight. (R. 287); *see* (R. 480-82) (August 17, 2007 treatment note also documenting that Claimant's mood cycling was improving with medication and adjusting the dosage in the hope of further improvement with mood stabilization). In September 2007, Claimant had increased crack cocaine use but also reported her medication was helping with her mood. (R. 28); *see* (R. 473-75) (September 19, 2007 treatment note reflecting that Claimant was using $10-20 of crack cocaine daily but also reporting improvement with depression, an even mood, and denying suicidal or homicidal thoughts).

Notably, Claimant was not seen again for mental health treatment until July 2008, when she reported more severe psychotic symptoms and depression, but also noted the recent deaths of four family members and that she had stopped taking her medication but had resumed taking it within the past month. (R. 28); *see* (R. 457-62) (July 15, 2008 treatment note reflecting such). In August 2008, after restarting her psychotropic medications, Claimant reported that she was having a good day, was not depressed, and was doing okay. (R. 28); *see* (R. 437-38) (August 21, 2008 treatment note also reflecting that Claimant used cocaine five to six times during the previous month). In October 2008, Claimant reported depression, auditory hallucinations, and paranoia, and it was noted that Claimant's

9

trial of Abilify was unsuccessful and her other psychotropic medications were adjusted. (R. 28); *see* (R. 396-401) (October 7, 2008 treatment note reflecting such). Even so, a March 26, 2013 treatment note reflects that Claimant requested a mental health referral and had not been seen since 2008. (R. 372). After summarizing this evidence, the ALJ stated

> [b]ecause the most recent treatment notes during the period in question document her ongoing substance abuse, it is difficult to assess the limitations resulting from her mental disorders in the absence of alcohol and drugs. However, notably, the claimant was assigned GAF scores in the mild range, even at times when she was abusing drugs and alcohol, suggesting she could perform the above residual functional capacity assessment if she abstained from drug and alcohol use. In light of her relatively mild GAF assessments and even her relatively normal mental status examinations during periods of substance abuse, one would expect that her psychiatric symptoms would significantly improve with her sustained sobriety and medication/treatment compliance.

(R. 28-29).

The ALJ thoroughly summarized the scant evidence of Claimant's mental health treatment from the time period at issue, noting that her reports of increased psychiatric symptoms coincided with periods of substance abuse and noncompliance with prescription medication, and even during those times, Claimant's mental functioning was not extremely impaired. Indeed, the effectiveness of medication in treating Claimant's mental conditions is significant to the determination of whether Claimant would be disabled if she stopped substance use. *See Finley v. Astrue*, No. 5:08-CV-209-D(1), 2009 WL 2489264, at *3-4, 8-9 (E.D.N.C. Aug. 13, 2009) (unpublished) (adopting memorandum and recommendation concluding that claimant with depression, bipolar disorder, and schizophrenia was not disabled where there was substantial evidence that claimant responded well to medication and treatment, was hospitalized less, and could care for personal needs absent substance use); *accord Sykes v. Colvin*, No. 5:12-CV-664-D, 2013 WL 6985179, at *7-9 (E.D.N.C.

Dec. 18, 2013) (unpublished) (concluding that claimant's substance abuse was material to his disability where his psychotic symptoms improved during periods of compliance with prescribed medications), *adopted by* 2014 WL 126058 (E.D.N.C. Jan. 13, 2014). Furthermore, "it is well established that '[i]f an impairment can be reasonably controlled by medication or treatment, it is not disabling.'" *Finley*, 2009 WL 2489264, at *12 (quoting *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986)). Here, Claimant is essentially asking this court to reconsider the same evidence assessed by the ALJ and reach a different conclusion. It is insufficient for the Claimant to point to other record evidence and argue that the ALJ's decision is unfounded, *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050, at *14 (E.D.N.C. Jan. 10, 2008) (unpublished), as this invites the court to re-weigh the evidence and substitute its own conclusions for those of the Commissioner, *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, the ALJ did not err in finding Claimant's substance abuse to be material to Claimant's disability.

**B.    The ALJ's Consideration of the Listings**

Claimant contends that the ALJ erred by failing to find that her PTSD and bipolar disorder met the listings. Pl.'s Mem. [DE-20] at 8-10. Claimant argues that she has more than mild restriction in activities of daily living, as supported by evidence that the VA found her incompetent to handle her financial affairs and to have a 100% disability rating based on her PTSD, and her brother fought with her in August 2007 about the way she was living and not taking care of her house. *Id.* Claimant also argues that she has more than moderate difficulties in social functioning, as evidenced by her dysfunctional relationship with her boyfriend and her paranoia and homicidal ideations. *Id.* In response, the Commissioner argues that substantial evidence supports the ALJ's assessment of the listings. Def.'s Mem. [DE-23] at 14-19.

To show disability under the listings, a claimant may present evidence either that the impairment meets or medically equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. §§ 404.1525, 404.1526. Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. § 404.1520(d). "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). "Plaintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (unpublished) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate why her medical impairments do, in fact, meet all of the elements of a given listed impairment," she fails to meet this burden. *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

Here, Claimant has failed to even identify the listings she contends the ALJ erroneously assessed. Where it is her burden to articulate how her medical impairments meet all of the elements of a particular listing, Claimant has failed to raise this issue in a meaningful way for the court's consideration. *See Ezzell v. Colvin*, No. 7:14-CV-251-D, 2016 WL 1212138, at *9 (E.D.N.C. Feb. 1, 2016) (unpublished) (holding that claimant's listing argument was without merit where the claimant only addressed one element of the listings in question), *adopted by* 2016 WL 1258791 (E.D.N.C. Mar. 28, 2016); *Martin v. Colvin*, No. 5:13-CV-000718-D, 2015 WL 1413387, at *2 n.2 (E.D.N.C. Feb. 18, 2015) (unpublished) (holding that the claimant failed to meet her burden of showing her condition met a listing where she identified several listings but made "no specific assertions as to how the ALJ erred with respect to the listings and [did] not address in detail how her

12

impairments meet a listing."), *recommendation rejected in part on other grounds*, 2015 WL 1413428 (E.D.N.C. Mar. 26, 2015); *Carmona v. Colvin*, No. 4:13-CV-00102-D, 2014 WL 4386131, at *6 (E.D.N.C. Aug. 18, 2014) (unpublished) (only considering the merits of the claimant's argument as to Listing 12.05 where the claimant argued the ALJ erred in considering four listings but "only addresse[d] in detail why she meets Listing 12.05, and [made] no specific assertions as to how the ALJ's determination as to the other Listings were in error."), *adopted by* 2014 WL 4384650 (E.D.N.C. Sep. 4, 2014). Thus, Claimant's argument on this issue is without merit.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-19] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] be ALLOWED and the final decision of the Commissioner be UPHELD.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 9, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **7 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation**

by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 23 day of February, 2017.

Robert B. Jones, Jr.
United States Magistrate Judge